**Marvin K. ROYSTER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–3326.**

Court of Appeals of Alaska.

Nov. 9, 1990.

---

Carol A. Brenckle, Soldotna, for appellant.

J. Ron Sutcliffe, Asst. Dist. Atty., James L. Hanley, Dist. Atty., Kenai, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

OPINION

Before BRYNER, C.J., COATS and SINGLETON,* JJ.

BRYNER, Chief Judge.

On June 8, 1989, Marvin K. Royster was arrested and charged with 94 counts of harassment in violation of AS 11.61.-120(a)(4). He was arraigned in the afternoon of the same day. He was present for the playing of the videotape advising the defendants of their rights. When Royster's case was called, the following exchange occurred:

COURT: Mr. Royster, you've been charged in a 94–count complaint with violating AS 11.61.120(a)(4). I'll read that statute to you. "A person commits the crime of harassment if, with intent to harass or annoy another person, that person makes an anonymous or obscene telephone call or a telephone call that threatens physical injury. Harassment is a class B misdemeanor offense punishable by a maximum fine of $1,000 and up to 90 days in jail." Have you had an opportunity to look at or review the complaint Mr. Royster?

ROYSTER: Yes I have, Your Honor.

COURT: And you wish me to read each one of the counts to you?

ROYSTER: No Sir, I do not.

COURT: You understand that each one of these counts is a separate count and you could be ... punishment would be 90 days on each one of those counts, understand that, and up to a $1,000 fine? Were you present Mr. Royster when the videotape was being played?

ROYSTER: Yes I was.

COURT: And is it your intention to have an attorney represent you in this matter?

ROYSTER: No Sir, I don't think so.

COURT: You're not going to have an attorney represent you?

ROYSTER: No Sir.

COURT: In watching the videotape, Mr. Royster, there was some explanation on the tape of what an attorney's function is. Do you fully understand from watching the video that an attorney's job would be to review the sufficiency of the complaint, make sure that all of the documents filed by the state are legally sufficient, to make whatever contacts and act in your behalf throughout this matter? Do you understand that?

ROYSTER: Yes.

COURT: And do you also understand Mr. Royster that if you could not afford an attorney, one would be appointed for you at no cost.

ROYSTER: Yes, I understand.

COURT: You also understand Mr. Royster that you would be at a severe disadvantage in proceeding in this matter without an attorney since the state is represented by a competent attorney.

ROYSTER: Yes, I understand that.

* This case was submitted for decision prior to Judge Singleton's resignation.

COURT: Mr. Royster, Do you feel that you're in the proper state of mind to be making the decision at this time.

ROYSTER: I do, Yes.

COURT: I'm going to find that you ... that you have knowingly waived your right to legal representation, Mr. Royster, based on what you told me. How do you wish to plead to these charges?

ROYSTER: No contest.

COURT: Mr. Royster, do you understand by entering pleas of no contest to each and every one of these counts, all 94 counts, the judgments of conviction will be entered in each one of those. And you'd be giving up your right to appeal those convictions, although you could appeal the sentences if they were unduly harsh. Do you understand that?

ROYSTER: Yes, I understand.

COURT: And you also understand that you would be giving up your right to have a jury trial. You would be giving up the right to have the state prove each and every element of those charges beyond a reasonable doubt. You would be giving up your right to confront witnesses the state may call against you, and to subpoena witnesses on your own behalf. Do you understand that?

ROYSTER: Yes Sir.

COURT: Has anyone made any threats or promises to induce you to make these pleas.

ROYSTER: No one, Sir.

COURT: And are you under the influence of any medication or any other substance that would tend to impair your judgment at this time.

ROYSTER: No Sir.

COURT: And again I'm going to ask you Mr. Royster if you feel that you were in the proper frame of mind to make this act, to enter this plea.

ROYSTER: Yes Sir.

COURT: The court will find that the defendant's pleas are knowing and voluntary pleas and accept them accordingly and enter judgments of conviction in each and every one of the 94 counts of the complaint.

Sentencing was set for June 14, 1989, but the court ordered a presentence report and continued sentencing until July 28, 1989. On July 5, 1989, Carol Brenckle entered an appearance on Royster's behalf. Brenckle moved to continue Royster's sentencing so that she could review the case in order to determine whether there was a basis for withdrawal of the plea. Sentencing was continued again until August 18, 1989. On August 14, 1989, Royster moved to withdraw his no contest plea. He argued that he should be allowed to withdraw his plea because his waiver of counsel was not knowing and intelligent, and because he had not been informed by the court before entering his plea that he could be facing up to 8,460 days in jail and a $94,000 fine.

The court conducted a hearing on this motion. Royster testified at the hearing that he was a diabetic and that at the time of his arrest, he was taking insulin as prescribed once a day. On the morning of his arrest, he had taken his insulin shot. He testified that he had had nothing to eat that morning and that when offered food at the jail prior to his arraignment, he was too upset to eat. He said that he had been given a copy of the complaint prior to the arraignment but that he had been too upset to read it. When the troopers asked if he wanted to see some of the evidence they had gathered, Royster declined and said he wanted to speak to an attorney. He remembered little of his arraignment hearing, but he did remember entering a no contest plea. He testified that he was confused and upset at the arraignment and did not understand that he faced a possible sentence of almost 24 years in jail and a $94,000 fine.

The court denied Royster's motion to withdraw his plea, finding that he had not established a fair and just reason for the plea withdrawal. The court specifically found that Royster had appeared at arraignment to be alert and responsive, showing no signs whatsoever of confusion. The court also rejected Royster's argument that he had not been informed of the maximum possible penalties, because Royster

had been advised that he was subject to a penalty of a $1,000 fine and 90 days in jail on each count.

Criminal Rule 11(c) provides in part:

(c) Pleas of Guilty or Nolo Contendere. The court shall not accept a plea of guilty or nolo contendere from a defendant without first addressing the defendant personally and

(1) determining that he understands the nature of the charge; and

. . . .

(3) informing him:

(i) of the mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered. . . .

Rule 11(h)(1)(ii)(cc) provides:

(h) Plea Withdrawal.

(1) The court shall allow the defendant to withdraw his plea of guilty or nolo contendere whenever the defendant, upon a timely motion for withdrawal, proves that withdrawal is necessary to correct manifest injustice.

. . . .

(ii) Withdrawal is necessary to correct a manifest injustice whenever it is demonstrated that:

. . . .

(cc) The plea was involuntary, or was entered without knowledge of the charge or that the sentence actually imposed could be imposed. . . .

Royster was advised by the court at arraignment that "each one of these counts is a separate count and . . . punishment would be 90 days on each one of those counts . . . and up to a $1,000 fine." However, Royster argues that the court should have further informed him that the total maximum penalty for all of his charges was 8,460 days in jail and a $94,000 fine. Royster argues that the court's failure to fully inform him of the maximum possible penalties, combined with his diabetes, which can sometimes lead to a confused mental state, constitutes a fair and just reason for withdrawal of his plea. He also argues that his waiver of counsel at arraignment was not knowing and intelligent because he had not been fully informed of the maximum possible penalty he faced.

Criminal Rule 11(h)(2) provides in part:

Before sentence, the court in its discretion may allow the defendant to withdraw a plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea.

We have established the following standard for reviewing decisions on Rule 11(h)(2) motions for withdrawal:

In seeking to withdraw a plea, the burden is on the defendant to establish a "fair and just" reason for withdrawal. The decision of whether to grant the withdrawal is within the trial court's discretion, but presentence requests for withdrawal should be liberally granted. The trial court's ruling on the withdrawal motion will only be reversed where the court abuses its discretion.

The trial court must consider the totality of the circumstances surrounding the defendant's request. The defendant's reason for seeking withdrawal must be evaluated against the delay preceding the request, the extent of prejudice to the prosecution, and the likelihood that the defendant is attempting to manipulate the system to obtain an unfair advantage.

*McClain v. State,* 742 P.2d 269, 271 (Alaska App.1987) (citations omitted). Applying this standard, we conclude that the district court erred in denying Royster's motion to withdraw his plea.

■ Although the court did inform Royster that he was charged with 94 counts, each punishable by 90 days imprisonment and a $1,000 fine, the court did not make it clear to Royster that all of the sentences could be imposed consecutively. It is also significant that after informing Royster of the maximum possible sentence on each count, the court did not ask if Royster understood the maximum or had any questions about the sentence. Instead, the court changed the subject, proceeding to ask Royster whether he had been present

when the videotaped advisement of rights was played.

The number of charges Royster faced and the gravity of the charged conduct combine to make this case equivalent in seriousness to a felony case. It is quite possible that the court did not impress this fact upon Royster at his arraignment. Royster's statements at the arraignment indicating that he understood the charges and the rights he was giving up by his plea are not conclusive. "[A] defendant's responses to judicial questioning during a change of plea hearing are notoriously unreliable." *Wahl v. State,* 691 P.2d 1048, 1052 (Alaska App.1984). Yet the trial court, in denying Royster's motion to withdraw his plea, gave overriding and evidently almost exclusive significance to his in-court assurances.

In so doing, the court seems to have wholly disregarded other significant evidence. Royster had just been arrested only a few hours before his arraignment. Shortly after being taken into custody, he told the troopers he wanted to speak with an attorney, an indication that he may have felt incapable of handling his situation on his own. Instead of providing Royster with counsel, the troopers elected to terminate the interview and he was taken to arraignment almost immediately. Although the timing of events makes it highly unlikely that Royster could have actually read the full 94–count complaint even if he had been in a fully composed state of mind, the court, at arraignment, did not read the complaint to him. Instead it accepted without question his affirmative response to the inquiry, "Have you had an opportunity to look at or review the complaint."

Presentence motions for plea withdrawal should be liberally granted. *McClain,* 742 P.2d at 271; *Travelstead v. State,* 689 P.2d 494, 497 (Alaska App.1984). Royster's motion to withdraw his plea was timely. The state failed to establish any prejudice that would result from the withdrawal of Royster's plea. There is no indication or finding that Royster was attempting to manipulate the criminal justice system or that he simply changed his mind.

Under the totality of the circumstances, we find that the district court abused its discretion in declining to find that Royster's confusion about the nature and seriousness of the multiple charges against him constituted a fair and just reason for the withdrawal of his plea.

The decision of the district court is REVERSED, and this case is REMANDED with the direction that Royster be permitted to withdraw his plea of no contest.

COATS, Judge, concurring.

The basic question in this case is whether Royster established a "fair and just" reason to withdraw his plea. I have chosen to write separately in order to state succinctly why I conclude that he did.

Royster entered his plea at his arraignment to 94 counts of harassment. When Royster entered his plea he was not represented by counsel. Each charge Royster pled to was a class B misdemeanor with a maximum sentence of 90 days of imprisonment and a $1,000 fine. However, Royster faced being sentenced as though he were a felony offender because of the serious nature of his offenses.

Shortly after Royster obtained an attorney, the attorney notified the court that she was investigating whether there was a basis to withdraw Royster's plea. The attorney acted with reasonable diligence to withdraw the plea.

I am particularly troubled by the fact that Royster immediately entered his plea to these serious charges without the advice of an attorney. I am also concerned whether Royster fully appreciated the seriousness of the charges and the potential severe punishment which he faced. The record does not allay these concerns.

As soon as he obtained an attorney, Royster informed the court through his attorney that he was considering withdrawing his plea. He then promptly moved to withdraw the plea. Royster's actions reinforce the conclusion that he did not fully understand his situation when he entered his plea and that he decided to withdraw his plea soon after he was able to talk to an

attorney. It does not appear that Royster only decided to withdraw his plea after he received an unfavorable presentence report or that he was otherwise attempting to manipulate the system. Because he acted promptly to withdraw his plea, the state has no realistic claim that it was prejudiced by Royster's original plea. I therefore conclude that Royster established a fair and just reason for withdrawing his plea.